UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------X
UNITED STATES OF AMERICA          :
ex rel. WALTER M. DRAKE,          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :     No. 3:94-cv-963 (EBB)
                                  :
NORDEN SYSTEMS, INC. AND          :
UNITED TECHNOLOGIES CORP.,        :
                                  :
          Defendants.             :
--------------------------------X

## RULING ON DEFENDANT'S RULE 41(b) MOTION TO DISMISS FOR FAILURE TO COMPLY WITH THE COURT'S FEBRUARY 10, 2005 ORDER AND RELATOR'S MOTION FOR AN EVIDENTIARY HEARING

### Introduction

Defendants Norden Systems, Inc. ("Norden") and United Technologies Corporation ("UTC") move, pursuant to Fed. R. Civ. P. 41(b) ("Rule 41(b)") and this court's orders, to dismiss the independent *qui tam* action raised on behalf of the United States by Relator Walter M. Drake ("Relator") under the False Claims Act ("FCA"). Relator moves for an evidentiary hearing and oral argument on Defendants' motion. For the following reasons, Defendants' Motion to Dismiss (Doc. No. 169) is GRANTED, and Relator's Motion for an Evidentiary Hearing (Doc. No. 180) is DENIED.

### Background

The following facts consist of those deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion. The facts are culled from the Amended Complaints,

previous rulings, the parties' moving papers and the exhibits attached thereto.

From 1987 to June 1994, Defendant Norden, a wholly-owned subsidiary of Defendant UTC, manufactured goods and provided services pursuant to defense contracts with the United States Government. In order to receive interim payments, Norden, like other government contractors, submitted Progress Bills ("Progress Bills"). These Progress Bills may include charges for indirect costs as long as the charges are allowable under the Federal Acquisition Regulations ("FAR") and, if applicable, the FAR's Cost Accounting Standards ("CAS"). 48 C.F.R. §§ 9904.400-9904.420-63. In addition, a contractor must also supply a Certificate of Indirect Cost that verifies all expenses are legitimate. A contractor that knowingly submits an unallowable charge is subject to the False Claims Act.

The FCA imposes civil liability on "any person" who:

(1)    knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

(2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false
    or fraudulent claim allowed or paid; ... or

(7) knowingly makes, uses, or causes to be made or used, a
    false record or statement to conceal, avoid, or
    decrease an obligation to pay or transmit money or
    property to the Government. . . .

31 U.S.C. § 3729(a). A defendant who has committed an FCA
violation is liable for treble damages, or three times the amount
of damages the Government sustained due to the defendant's
action, in addition to a civil penalty of $10,000 for each claim.
31 U.S.C. § 3729(a).

The FCA also contains a *qui tam* provision, which empowers
private individuals, called relators, to sue false claimants on
behalf of the Government. *Id.* at § 3730(b). The Government has
an opportunity to intervene, but, if it decides not to do so, the
relator may proceed with the action and will be entitled to a
percentage of any reward recovered. *Id.* at § 3730(c)(3) and (d).

Relator, Norden's Supervisor of Facilities Accounting,
commenced his *qui tam* action on June 14, 1994, alleging that he
discovered a number of False Claims Act violations committed by
Defendants. After three years of investigation, the Government
declined to intervene in Relator's action.

In the last ten years, Relator has amended his complaint
four times. The first amended complaint was filed in July, 1997.

Relator's Second Amended Complaint was filed in December, 1997, and contained four claims based on Defendants' billing and accounting practices:

Claim 1:  Relator's first claim asserted Defendant Norden violated 31 U.S.C. §§ 3729(a)(1) and (a)(2) by knowingly presenting the Government with false claims for payment and for supporting these claims with false records or statements, including the following documents: (1) Progress Bills, (2) Certificates of Indirect Cost rates ("Certificates"), (3) Disclosure Statements, (4) Contracts, and (5) Present Responsibility Agreements ("PRAs").

Claims 2 and 3:  Claim 2 asserted Defendant Norden violated 31 U.S.C. §§ 3729(a)(2) and (a)(7) by making false statements to conceal an obligation to repay the Government money it was owed. Claim 3 made the same assertion against Defendant United Technologies.  Again, Relator alleged the basis for these claims was contained in (1) Progress Bills, (2) Certificates, (3) Disclosure Statements, (4) Contracts and (5) PRAs.

Claim 4:  Claim 4 asserted both Defendants conspired to defraud the Government by getting a false claim allowed or paid, in violation of 31 U.S.C. § 3729(a)(3).  Relator maintains this occurred after he brought Defendant Norden's improper accounting practices to Defendant UTC's attention and, instead of remedying the situation, UTC and Norden allegedly entered into an unlawful

understanding to conceal the misconduct and continue to defraud the Government.

## I.  August 24, 2000 Ruling

Defendants moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief could be granted and for failure to plead fraud with the requisite Fed. R. Civ. P. 9(b) (hereinafter "Rule 9(b)") specificity.  After a stay of six months due to the Supreme Court's review of the FCA's *qui tam* provisions, this court ruled on Defendants' motion on August 24, 2000.  This Court granted the motion in part and denied it in part.

### A.  31 U.S.C. § 3729(a)(1)

With respect to liability under 31 U.S.C. § 3729(a)(1), the FCA defines a claim as "any request or demand . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded . . . ."  31 U.S.C. § 3729(e).  In determining the falsity of a claim, compliance with the CAS is the crucial element in verifying cost allowability, and thereby ascertaining the falsity of a claim. FAR § 31.201-2(a)(3).  This court held that only the submission of the Progress Bills, and not the Certificates, Disclosure Statements, Contracts, or PRAs, constituted FCA claims for the purpose of subsection (a)(1).  This court reasoned this was

because the Progress Bills were the only documents that requested payment and therefore were within the statute's definition of a claim, and that they were pleaded with the specificity required by Rule 9(b). This court reasoned Relator fulfilled his Rule 9(b) obligations by alleging Defendant Norden did not follow the CAS mandated policies, resulting in unallowable costs in the Progress Bills.

## B. 31 U.S.C. § 3729(a)(2)

FCA liability under subsection (a)(2) is triggered if a false record or statement is a prerequisite to a government payment. *See* 31 U.S.C. § 3729(a)(2). This court held that only the Certificates and Progress Bills verified compliance with regulatory provisions, and therefore operated as prerequisites for payment. As such, this court determined only those two types of documents, and not the Disclosure Statements, Contracts or PRAs, were actionable under subsection (a)(2) for falsely certifying regulatory compliance in order to get a claim paid. This court explained that the Contracts did not contain any certification that the cost bills were allowable, or a prerequisite to payment of a claim. In addition, although Disclosure Statements are required for all CAS-covered contracts, they are not a cost accounting standard and therefore do not factor into cost allowability. This court also noted that Relator did not claim that the PRAs Defendants submitted induced

payment of a false claim, and that, like the Disclosure Statements, the PRAs were not necessary prerequisites to a claim for payment.  Therefore, only the Progress Bills and Certificates could support a subsection (a)(2) claim.

### C.    31 U.S.C. § 3729(a)(3)

Relator alleged that Defendants UTC and Norden knowingly conspired to defraud the Government in violation of 31 U.S.C. § 3729(a)(3) . A 31 U.S.C. § 3729(a)(3) claim has three elements: (1) a conspiracy with one or more persons to get a false claim paid by the Government, or to conceal, avoid or decrease an obligation owed to the Government; (2) an act in furtherance of the conspiracy by one of the conspirators; and (3) damages resulting from the false claim.  This court determined Relator failed to plead the first two elements with sufficient specificity, since general allegations of a conspiracy do not meet Rule 9(b)'s requirements.  Fed. R. Civ. P. 9(b).  Therefore, this court dismissed this claim without prejudice.

### D.    31 U.S.C. § 3729(a)(7)

31 U.S.C. § 3729(a)(7), also known as the reverse false claims provision, concerns money claims owed to the Government, rather than payments made by the Government under subsection (a)(1).  To state a claim under subsection (a)(7), a party must allege that a false statement was made for the purpose of concealing, avoiding or decreasing an obligation to pay the

Government.  The obligation to pay may be contractual or
statutory.  This court found that Relator sufficiently pleaded a
cause of action against Defendant Norden because Relator's claim
against Norden was based on its Progress Bills and Certificates,
which failed to comply with the FAR provision in the Contracts
that mandated disallowed costs be automatically reimbursed, in
accordance with the CAS.

However, this court determined that Relator had not
sufficiently pleaded a cause of action against Defendant UTC,
because the allegations were based solely upon the PRAs, and not
upon the FAR's CAS compliance provision in the contracts.  Unlike
the contracts' CAS compliance provision, the PRAs did not contain
language that would make disallowed costs automatically
reimbursable.  Therefore, this court dismissed the reverse false
claim against Defendant UTC with prejudice.

### E.    Statute of Limitations

This court also held that, under the statute of limitations,
Relator could only advance evidence of falsity for claims
submitted after June 14, 1988, which was six years before filing
the first complaint.  31 U.S.C. §3731(b)(1).  This court
determined that alleged false claims that predated the first
complaint by more than six years could be submitted only for the
limited purpose of supporting claims submitted within the six-
year statute of limitations period.

This court concluded its ruling by ordering Relator to file an amended complaint that conformed to the August 24, 2000 ruling within 60 days. However, Relator did not file his amended complaint within the Court's deadline.

## II.  July 25, 2001 Ruling and Subsequent Events

Eleven months passed without the Relator's amended complaint, and on July 25, 2001 this court ruled on the parties' previously filed partial summary judgment motions. Relator claimed that Defendant Norden violated UTC's fixed asset capitalization policy, which was set forth in UTC's Financial Manual (hereinafter "Financial Manual"). Defendants, however, asserted that the Financial Manual could not be a violation of CAS and therefore of 31 U.S.C. §§ 3729(a)(1), (a)(2) and (a)(7). This court agreed, finding in favor of the Defendants. In its ruling, this court noted that Relator had yet to file his amended complaint.

On January 31, 2002, the district court clerk notified Relator that no action had been taken in the case for six months, and therefore the case was subject to dismissal under the local rules unless Relator submitted a satisfactory explanation for the delay within 20 days. Relator responded within the 20-day time frame, filing an amended complaint and asserting the delay was caused by the complexity of the claims, the large volume of discovery and motions, and scheduling conflicts.

Defendants then moved to strike the Third Amended Complaint and dismiss the case for failure to prosecute under Fed. R. Civ. P. 41(b). This court granted the motion on February 19, 2003, highlighting Relator's seventeen-month delay in filing his Third Amended Complaint. Relator moved for relief from judgment, which this court denied on June 17, 2003. Relator then appealed.

On July 14, 2004, the Second Circuit Court of Appeals affirmed in part and reversed in part this court's dismissal of the case. The Second Circuit determined that the duration of Relator's delay in filing his amended complaint weighed in favor of dismissal. Also favoring dismissal was the prejudice that Defendants suffered with respect to the claims this court dismissed without prejudice, because these claims were dismissed due to insufficient specificity, and therefore Defendants "were in the dark as to the exact contours of the charges against them and so they would have a much harder time preparing their defense." *United States ex. rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 257 (2004). However, the Second Circuit also determined that the Defendants had no such hindrance when it came to claims that survived this court's rulings before the Rule 41(b) dismissal, as they were in a good position to preserve evidence and prepare their defense to these claims. Also weighing against dismissal was the failure to provide notice of dismissal as a sanction in the event of further delays, the

weight of Relator's opportunity to be heard over the court's docket management, and the failure to consider lesser sanctions weighed against dismissal of the case. Therefore, the Second Circuit reversed the dismissal of Relator's Claims 1 and 2 based on the Progress Bills and Certificates. However, the Second Circuit affirmed this court's rulings with respect to its dismissal of the claims that had not been pleaded with sufficient specificity, which included Relator's Third and Fourth Claims. The Second Circuit did not disturb this court's rulings on the statute of limitations and the exclusion of Defendants' Financial Manual as a basis for an FCA violation.

On November 4, 2004, Defendants filed a motion to require a complaint that conforms to the orders of this court and the Second Circuit. Relator responded on November 19, 2004, explaining that, while he did not think a conforming amended complaint was necessary "since the opinions of this court and the Second Circuit establish clearly which claims in plaintiff's existing pleadings remain in the case and which have been dismissed", he was not opposed to filing one. Rel.'s Response to Defs.' Mot. to File a Conforming Compl. at p. 1 (Doc. No. 162). This court had two status conferences with the parties in January and February of 2005. During the February 8, 2005 conference, it was revealed that Defendant Norden was insolvent, and the prudence of continuing the case was discussed since all claims

against Norden's parent company, Defendant UTC, had been dismissed. This court granted Relator the opportunity to conduct limited discovery on the responsibility of any person or entity for payment of a potential judgement against Defendant Norden.

This court then granted Defendants' motion to require a conforming amended complaint on February 10, 2005. In its ruling, this court ordered Relator to file a conforming amended complaint no later than sixty days after he had determined, after his limited discovery, whether the case should proceed. On September 21, 2005, after a telephone conference on the same date, this court ordered Relator to file his conforming amended complaint on or before October 6, 2005. Relator filed his Fourth Amended Complaint within the deadline, on October 6, 2005. A month later, on November 8, 2005, Defendants filed their Motion to Dismiss for failure to comply with this court's February 10, 2005 order. Relator objected, and Defendants replied.

On July 26, 2007, Relator also filed a Motion for an Evidentiary Hearing on Defendants' pending Motion to Dismiss. In his motion, Relator asserts that Defendants attacked Relator's description of the September 21, 2005 telephone conference and his counsel's assertions of his efforts to comply with this court's orders concerning the Fourth Amended Complaint and the good faith bases for the allegations in the Amended Complaint.

Relator also asserts that there is no evidence to support Defendants' claims of prejudice.

**Discussion**

**I.  Standard of Review**

    **A.  Fed. R. Civ. P. 41(b)**

Fed. R. Civ. P. 41(b) provides that a defendant may move for dismissal of an action or claim against it if the plaintiff fails to prosecute or comply with the Federal Rules.  In such cases, this court has the power to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute. *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).  In deciding whether to dismiss a case under Rule 41(b), this court must consider five factors: (1) the duration of the plaintiff's failure to comply, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the balance between the court's interest in managing its docket and the plaintiff's interest in being heard, and (5) the adequacy of sanctions short of dismissal. *Spencer v. Doe*, 139 F.3d 107, 112-13 (2d Cir. 1998); *see also Shannon v. General Elec. Co.*, 186 F.3d 186, 193-94 (2d Cir. 1999).  No single factor

is dispositive. *United States v. Norden Sys., Inc.*, 375 F.3d at 254. Rather, the court must review dismissal in light of the record as a whole. *Id.*

### B.    Fed. R. Civ. P. 9(b)

Rule 9(b) requires that when a party asserts fraud in its complaint, "the circumstances constituting fraud shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Antian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (citing *Shields v. Citytrust Bankcorp., Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994). The specificity requirement's purpose is to ensure a complaint provides fair notice to a defendant of the plaintiff's claim and adequate information to frame a response. *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

## II. Five Rule 41(b) Dismissal Factors

### A.    Duration

Under the first factor, two aspects must be considered: (1) whether the plaintiff caused the delay, and (2) whether the delays or failure to prosecute were of significant duration.

*Norden*, 375 F.3d at 255. Here, this court finds that Relator caused the delays. First, Relator has yet to comply with this court's February 10, 2005 ruling requiring him to file an amended complaint that conforms to this court's and the Second Circuit's rulings.

More specifically, Relator includes dismissed allegations, which are inapposite to this court's February 10, 2005 ruling. This court determined in its August 24, 2000 ruling, and the Second Circuit affirmed, that all claims against Defendant UTC were dismissed. *Id.* at 258. Furthermore, the Second Circuit held that only those claims that survived the August 24, 2000 and July 25, 2001 rulings could proceed. *Id.* at 257. The claims that did not survive this court's August 24, 2000 and July 25, 2001 rulings included (a) Relator's claim that the Certificates, Contracts, Disclosure Statements and PRAs are a basis for an FCA subsection (a)(1) claim; (b) Relator's claim that the Contracts, Disclosure Statements and PRAs are a basis for an FCA subsection (a)(2) claim; (c) Relator's FCA subsection (a)(3) conspiracy claim against Defendants UTC and Norden; (d) Relator's attempt to assert claims before June 14, 1988, which were outside of the six-year statute of limitations, and (e) Relator's claim in his Motion for Partial Summary Judgment that Defendant Norden's failure to follow UTC's Financial Manual violated the FCA.

Despite the holdings by this court and the Second Circuit, and Relator's own assertion that "the opinions of this Court and the Second Circuit establish clearly which claims in [Relator's] existing pleading remain in the case and which have been dismissed", Relator's Response to Defs.' Mot. to Require a Conforming Amended Complaint at p. 1, Nov. 19, 2004 (Doc. No. 162), Relator includes these dismissed allegations in his Fourth Amended Complaint. For example, Relator repeatedly references the Contracts, Disclosure Statements and PRAs in his Fourth Amended Complaint. Relator asserts that he has deleted references to the dismissed statements from two paragraphs, paragraphs 73 and 116; however, he references these statements in over twenty other paragraphs in his Fourth Amended Complaint. Relator claims that he includes mention of these documents, not as proof of any FCA violation but to show Norden's scienter in order to fulfill Rule 9(b)'s pleading requirements. Rel.'s Mem. in Opp'n to Defs. Mot. to Dismiss at pp. 21-22, Dec. 12, 2005 (Doc. No. 177). However, demonstrating Norden's scienter is a required part of Relator's FCA claims, and this court expressly ruled that the Contracts, PRAs and Disclosure Statements are not a basis for an FCA claim. In addition, the purpose of Rule 9(b) is to provide Defendants with notice of the parameters of the claims against them so they may prepare their defense. *O'Brien*, 936 F.2d at 676. If dismissed claims could reappear on a

plaintiff's whim, the notification purpose of Rule 9(b) would be contravened.

Relator has also included dates in his claims that ignore this court's statute of limitations ruling. This court held that "alleged false claims submitted prior to [June 14, 1988], or other documents offered in support of such untimely claims, are time-barred." *United States ex. rel. Drake v. Norden Sys., Inc.*, No. 3:94-CV-963, 2000 WL 1336497, at *13 (D. Conn. Aug. 24, 2000). The Second Circuit left this ruling undisturbed. *See generally Norden*, 375 F.3d 248. Relator claims that these pre-June, 1988 dates are permissible because they demonstrate the falsity of post-June, 1988 dates. However, the plain language of Relator's Fourth Amended Complaint belies this assertion. In his First and Second Claims for Relief, Relator states that claims "from 1987" are actionable under the False Claims Act. Rel.'s Fourth Amended Complaint ¶¶ 116, 116(a)[1]; *see also, e.g., id.* at ¶ 24 ("From 1987 to June 1994, Norden submitted periodic progress bills. . ."). In doing so, Relator has not conformed his amended complaint to this court's prior rulings.

With respect to the new claims, during the February, 2005 status conference, this court granted Relator limited discovery on whether he would be able to collect if there were a judgment

_____

[1]In his Fourth Amended Complaint, Relator has two paragraphs numbered 116 and two paragraphs numbered 117. Therefore, the Court will refer the first paragraph as the number (e.g. "116" or "117"), and the second paragraph with the same number plus "a" (e.g. "116a" or "117a").

against Defendant Norden, since Defendant Norden was insolvent and all the claims against its parent company Defendant UTC had been dismissed.  The focus of the status conference was to discuss whether it was prudent to continue with the case given the potential inability to collect on a possible judgment, not on adding new claims.  In fact, in this court's February 10, 2005 ruling, it anticipated that Relator would not continue with its action, as the last sentence states "Plaintiff shall promptly notify the court of his decision whether he intends to continue or withdraw this litigation."  Ruling on Mot. To Require Compl. that Conforms to the Orders of this Court and the Opinion of the Court of Appeals, Feb. 10, 2005 (Doc. No. 165).

In addition, the new claims in Relator's Fourth Amended Complaint are inapposite to the Second Circuit's July, 2004 ruling and the statute of limitations.  The Second Circuit's rationale for affirming the dismissal of Relator's unspecific claims was that such claims would unfairly prejudice Defendants' ability to form a defense because Defendants would not be aware of what those claims were.  This notification to prepare a defense is the purpose of Rule 9(b)'s specificity requirement. *O'Brien*, 936 F.2d at 676.  Therefore, any new claims against either Defendant, including Defendant UTC, would contravene Rule 9(b)'s purpose.  Furthermore, these new claims against UTC are

well outside the statute of limitations, which ran over a decade ago.

This court must also consider whether the length of the duration is significant.  The answer to this question is clearly yes.  Relator has failed to comply with this court's February, 2005 order to submit an amended complaint that complies with this court's and the Second Circuit's rulings.  While this court did order Relator to submit its conforming amended complaint by October 6, 2005, and Relator did submit an amended complaint within the deadline, this complaint clearly does not conform to this court's February, 2005 order for the reasons mentioned above.  Furthermore, this is not the first time Relator has delayed these proceedings.  This case was originally dismissed because Relator missed his deadline to file his Third Amended Complaint by seventeen months.  The repeated nature of Relator's non-compliance with court orders is a factor the court must consider.  *Feurtado v. City of New York*, 225 F.R.D. 474, 478 (Rule 41(b) dismissal where pro se plaintiff repeatedly failed to submit pretrial materials as ordered and otherwise delayed the case); *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993)(Rule 41(b) dismissal where party "failed to comply with two court orders and otherwise demonstrated a lack of respect for the court").  Relator has also missed multiple deadlines for other filings, as Defendants address in their Motion to Dismiss.

Defs.' Rule 41(b) Mot. to Dismiss, Nov. 8, 2005, p. 12 n. 6.
Therefore, this factor weighs in favor of dismissal.

**B.    Notice**

The Rule 41(b) dismissal test also requires an examination
of whether the plaintiff received notice that further delay would
result in dismissal for failure to prosecute. *Norden*, 375 F.3d
at 255; *see also Peart*, 992 F.2d at 461. This case was dismissed
by this court for failure to prosecute once before. *Norden*, 2003
WL 925437 at *1, *5. This court can find no better notice that
further delays by Relator would result in dismissal of the case
than actual dismissal itself. Therefore, this factor weighs in
favor of dismissal.

**C.    Prejudice**

The next factor to examine is whether Defendants are likely
to be prejudiced by further delay. *Norden*, 375 F.3d at 257. A
presumption of prejudice is appropriate where the plaintiff's
delay was prolonged. *Shannon v. General Elec. Co.*, 186 F.3d 186,
195 (2d Cir. 1999).

The difficulties of evidence retention and expense are
already present in this case due to its longevity of over a
decade. However, Relator has compounded these difficulties for
Defendants by delaying matters further. Relator significantly
delayed proceedings in the past by failing to file an amended
complaint for seventeen months. Despite leniency from the Second

Circuit for this delay, Relator has presently and significantly delayed the proceedings again by failing to file a *conforming* amended complaint after this court's ruling requiring he do so by October 6, 2005. Relator's present delay is almost eleven months in duration. In addition, Relator is requesting an evidentiary hearing on what he claims to be factual disputes with respect to the prejudice Defendants' suffered from Relator's delays. Rel.'s Mot. for Evidentiary Hr'g and Oral Argument at ¶ 7, July 26, 2007 (Doc. No. 180)(hereinafter "Rel.'s Mot. for Evid. Hr'g").

An evidentiary hearing is not necessary for this court to see that Defendants have been prejudiced by Relator's delay. This case has been unsealed for over ten years. In that time, there have been numerous delays due to Relator. Defs.' 41(b) Mot. to Dismiss, Nov. 8, 2005, p. 12 n. 6. Furthermore, because Relator has failed to file a conforming Fourth Amended Complaint, particularly by including dismissed allegations, he places Defendants in a difficult position regarding the preservation of evidence and preparing their defense. This is precisely what the Second Circuit was concerned with when it affirmed dismissal of the claims that did not provide the requisite specificity. *Norden*, 375 F.3d at 257. The Second Circuit upheld the 41(b) dismissal of claims lacking the required specificity because it did not want Defendants to be "in the dark as to the exact

contours of the charges against them" to avoid their having "a much harder time preparing their defense." *Id.* Including dismissed allegations such as the Contracts, Disclosure Statements, PRAs and the Financial Manual as grounds for an FCA claim is precisely the hardship Relator creates for Defendants. Therefore, this court finds that the prejudice to Defendants from further delay weighs in favor of dismissal.

### D.   Balance Between Calendar Congestion and the Opportunity to Be Heard

The fourth factor to consider is the balance between this court's interest in managing its docket and the plaintiff's interest in being heard. *Id.*; *see also Shannon*, 186 F.3d at 195. Here, Relator has repeatedly and significantly delayed this case. Defs.' Rule 41(b) Mot. to Dismiss, Nov. 8, 2005, p. 12 n. 6. This is the second time that a motion to dismiss for failure to prosecute based on Rule 41(b) has appeared before this court.  In addition, in the interim between the first Rule 41(b) Motion to Dismiss and the second, this court participated in numerous status conferences for this matter. *See* Doc. Nos. 163, 164, 168 (referencing status conferences on January 24, February 8, and September 21, 2005).  This court also provided Relator with a specific date by which to file his conforming amended complaint, and still Relator has yet to follow this court's and the Second Circuit's rulings. *See* Order: Amended Complaint Due on or before

Oct. 6, 2005 (Doc. No. 166).  Relator's failure to follow court
orders has placed an undue burden on this court that outweighs
his interest in being heard.  Therefore, this factor also favors
dismissal.

### E.   Consideration of Lesser Sanctions

The last factor to consider is whether lesser sanctions than
dismissal are a sufficient remedy to any prejudice stemming from
Relator's delay.  *Norden*, 375 F.3d at 257.  Here, Relator was
given lesser sanctions by the Second Circuit.  *Id.* at 258.
However, these lesser sanctions did not induce him to comply with
this court's or the Second Circuit's rulings.  Despite Relator's
assertion that he felt "the opinions of this court and the Second
Circuit establish clearly which claims in plaintiff's existing
pleading remain in the case and which have been dismissed",
Relator has failed to comply with this court's and the Second
Circuit's rulings by including dismissed claims in his Fourth
Amended Complaint.  Relator's Response to Defs.' Mot. to Require
a Conforming Compl., at p. 1, Nov. 19, 2004 (Doc. No. 162).  As
lesser sanctions do not appear to affect Relator's ability to
conform his amended complaint to the orders of this court and the
Second Circuit, this final factor weighs in favor of dismissal.

### III. Motion for an Evidentiary Hearing

Relator requests an evidentiary hearing regarding
Defendants' pending Rule 41(b) Motion to Dismiss.  Rel.'s Mot.

for Evid. Hr'g.  Relator asserts that a hearing would resolve the alleged factual disputes regarding (a) the agreement on September 21, 2005 regarding Relator's addition of new claims to his amended complaint, (b) Defendants' allegations of Relator's willfulness and bad faith in failing to comply with this court's February 10, 2005 order, and (c) whether Defendants' have suffered prejudice from Relator's Fourth Amended Complaint filing. *Id.* Relator also asserts an evidentiary hearing is required before his assertions in Relator's counsel's Affidavit may be rejected, and in order for Defendants to present evidence of their claim of prejudice. *Id.* at p. 3.

This court was present during the February and September, 2005 status conferences where Relator asserts new claims were discussed.  Relator did raise the possibility of new claims but there was no agreement that the propriety of the assertion of new claims would not be challenged.  This court is therefore in the position to determine the events of those status conferences without an evidentiary hearing.   The same is also true of Relator's assertions regarding prejudice to Defendants.  As explained above, this court has long been involved in the details of the case, and can easily determine that Defendants have suffered prejudice from Relator's delays.

With respect to Relator's willfulness or bad faith in failing to comply with court rulings, the five-factor Rule 41(b)

dismissal test does not require this court to make such a determination.  This is evident by the fact that the Second Circuit, in its review of this court's first Rule 41(b) dismissal of Relator's remaining claims, did not cite bad faith or willfulness as a requirement for dismissal.  *Norden*, 375 F.3d at 254-58.  As such, this court has not made a determination of the willfulness <u>vel</u> <u>non</u> of Relator's noncompliance in ruling that a Rule 41(b) dismissal is appropriate.  The fact that Relator has not complied with this court's orders, as well as its examination of the five Rule 41(b) dismissal factors, is sufficient for this court to consider dismissal without an evidentiary hearing.

Finally, Relator cites *Colon v. Mack*, 56 F.3d 5 (2d Cir. 1995) in support of his assertion that an evidentiary hearing is required before this court can reject Relator's counsel's Affidavit assertions.  Rel.'s Mot. for Evid. Hr'g at ¶ 6.  In *Colon*, the Second Circuit reversed a Rule 41(b) dismissal of a prisoner's § 1983 action against five prison guards.  *Id.*  The district judge had dismissed the action without an evidentiary hearing because the prisoner failed to appear in court on the jury selection date, highlighting that the prisoner's affidavit explaining his absence was implausible and contradicted by contemporaneous prison records.  *Id.* at 7.  The Second Circuit reversed the ruling, explaining that because of the prisoner's averment that he did not receive notice of the court date, that

25

the guards spoke to him in English, which was a language he did not understand, and that the conversations with the guards occurred in the middle of the night, the district court erred in dismissing the prisoner's allegations as implausible without an evidentiary hearing. *Id.* In addition, since a sanction short of dismissal was available to the court – proceeding to jury selection without the presence of the prisoner – the court of appeals reversed and remanded the case without the need for an evidentiary hearing to resolve the factual disputes on credibility.

Unlike *Colon,* the issues raised in Relator's counsel's Affidavit are not necessary for this court to decide Defendants' Rule 41(b) Motion to Dismiss, as explained above. Also unlike *Colon*, Relator's failure to comply with court rulings has been repeated. In addition, here Relator has been granted lesser sanctions before without effect, unlike the plaintiff in *Colon*. Therefore, *Colon* is distinguishable and does not mandate an evidentiary hearing in this matter.

## Conclusion

For the aforementioned reasons, Defendants' Rule 41(b) Motion to Dismiss (Doc. No. 169) is GRANTED, and Relator's Motion

for an Evidentiary Hearing (Doc. No. 180) is DENIED

                         SO ORDERED.


                         _____
                         ELLEN BREE BURNS, SENIOR JUDGE
                         UNITED STATES DISTRICT COURT

    Dated at New Haven, CT, this _____ day of September, 2007.