UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| ex rel. WALTER M. DRAKE, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:94-cv-963 (WWE) |
| : | |
| NSI, INC., f/k/a NORDEN SYSTEMS, INC. : | |
| and UNITED TECHNOLOGIES : | |
| CORPORATION, : | |
|     Defendants. : | |

**MEMORANDUM OF DECISION ON MOTION FOR
RECONSIDERATION AND MOTION TO AMEND COMPLAINT**

Relator Walter M. Drake has filed two motions. First, he moves for reconsideration on the Court's prior dismissal of his third claim for relief based on the former 31 U.S.C. § 3729(a)(7) & (2) against defendant United Technologies Corporation ("UTC") (Doc. #204). Second, he seeks leave to amend his complaint to assert a claim for recovery against UTC pursuant to 31 U.S.C. § 3729(a)(1)(B) (Doc. #203). For the reasons which follow, the motion for reconsideration will be granted. Upon reconsideration, the Court will permit relator Drake to assert a claim under the former 31 U.S.C. § 3729(a)(2), which has been recodified as 31 U.S.C. § 3729(a)(1)(B). The motion for leave to amend the complaint will be denied as moot.

**BACKGROUND**

**I.    Allegations in the Complaint**

The underlying factual allegations and the identities of the parties are set forth in the Court's September 20, 2007 ruling as well as its previous rulings. Therefore, the Court will not repeat them here.

1

## II.    Procedural History

Relator Walter M. Drake commenced this qui tam action with the filing of a complaint under seal on June 14, 1994 (Doc. #1). His claims were made under the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"). On June 2, 1997, the United States declined to intervene (Doc. #27), and the Court ordered the complaint unsealed and served upon defendants (Doc. #28). On July 7, 1997, Drake filed an amended complaint (Doc. #29) which was then served upon defendants.

On September 15, 1997, defendants moved pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the first amended complaint (Doc. #40). Instead of filing an opposition to the motion, Drake filed a second amended complaint on December 17, 1997 (Doc. #53). In this complaint, Drake asserted claims under (I) FCA § 3729(a)(1) & (2) against Norden; (ii) FCA § 3729(a)(7) & (2) against Norden; (iii) FCA § 3729(a)(7) & (2) against UTC; and (iv) FCA § 3729(a)(3) for conspiracy against Norden and UTC.

Defendants moved to dismiss the second amended complaint on January 27, 1998 (Doc. #62). On the same day, Drake moved for partial summary judgment (Doc. #64). Defendants opposed Drake's motion and cross-moved for partial summary judgment (Doc. #90). Drake asserts that prior to the Court issuing an opinion on the motion to dismiss, the parties conducted voluminous discovery.

On August 24, 2000, the Court dismissed Drake's claim against defendant UTC under FCA § 3729(a)(2) with prejudice on the grounds that any false statements in UTC's Disclosure Statements and Present Responsibility Agreement ("PRA") reports were not "necessary antecedents to a claim for payment, and because the contracts did

not certify that costs billed were allowable, alleged falsity contained in these documents is not actionable under FCA § 3729(a)(2)."[1] The Court also dismissed Drake's "reverse false claim" under FCA § 3729(a)(7) against UTC with prejudice because there were no fixed or existing obligations to the government. Finally, the Court dismissed without prejudice Drake's conspiracy claim against both defendants. The Court permitted Drake sixty days to file an amended complaint; Drake did not do so.

On July 25, 2001, the Court issued a ruling on the parties' cross-motions for partial summary judgment, granting defendants' motion and denying Drake's motion (Doc. #119).[2]

On January 31, 2002, the Court issued a notice stating that "[u]nless satisfactory explanation of why [this case] should not be dismissed is submitted to the Court within twenty (20) days of the date of this notice, it will be dismissed" (Doc. #120).[3] On February 19, 2002, Drake filed a third amended complaint (Doc. #122). Defendants then moved to strike the third amended complaint and to dismiss the case for failure to prosecute under Federal Rule of Civil Procedure 41(b). Finding that Drake had failed to properly prosecute his case, the Court dismissed the case with prejudice on February 19, 2003. The Court noted that:

---

[1] This ruling is available at United States ex rel. Drake v. Norden Systems Inc., 2000 U.S. Dist. LEXIS 13371 (D. Conn. Aug. 24, 2000) (Doc. #118).

[2] This ruling does not appear to have been published or reported.

[3] The Court recognized Drake's claim that the delay in this proceeding was due to conduct by both parties. See Ruling on Defendants' Motion to Strike Plaintiff's Third Amended Complaint and to Dismiss, 2003 U.S. Dist. LEXIS 3044, *7 n.3 (Feb. 19, 2003) (Doc. #140).

> Drake's Third Amended Complaint does lack certain indicia of substantive compliance. For example, Drake's Third Amended Complaint so closely resembles his Second Amended Complaint with respect to those claims dismissed by the Court in its August 24, 2000 ruling that the Court questions whether Drake's filing in response to the Rule 16 Notice sacrificed compliance with the substance of the Court's earlier order for expediency brought on by the threat of dismissal.

Feb. 19, 2003 Ruling, 2003 U.S. Dist. LEXIS 3044 at *11 n.4.

Drake subsequently moved for reconsideration under Rules 59(e) and 60(b); the Court denied Drake's motion on June 17, 2003 (Doc. #154).

Drake appealed. On appeal, the Second Circuit Court of Appeals disagreed "that the circumstances were sufficiently egregious or that Drake's actions were so contumacious as to warrant dismissal of his entire complaint." United States ex rel. Drake v. Norden Sys., 375 F.3d 248, 251 (2d Cir. 2004). The Court of Appeals, however, affirmed the dismissal of those claims that had previously been dismissed without prejudice, but reversed the dismissal of all claims that had not previously been dismissed at any stage. As a result, only Norden remained a defendant in the case, and Drake's claims under FCA § 3729(a)(3) against both defendants and under FCA § 3729(a)(7) against UTC were dismissed.

On February 10, 2005, the Court issued an order granting defendants' request that Drake file an amended complaint within sixty days following the close of certain limited discovery (Doc. #165). Drake filed a fourth amended complaint on October 6, 2005 (Doc. #167); defendants filed a motion to dismiss based on Drake's failure to comply with the Court's February 10 order. Specifically, defendants pointed to Drake's inclusion of allegations that had been previously dismissed and new allegations and

4

theories of liability. The Court, on September 20, 2007, granted the motion to dismiss (Doc. #184) for failure to prosecute pursuant to Rule 41(b). See Ruling on Defendant's Rule 41(b) Motion to Dismiss for Failure to Comply with the Court's February 10, 2005 Order and Relator's Motion for an Evidentiary Hearing, 2007 U.S. Dist. LEXIS 69994 (D. Conn. Sept. 20, 2007).

The Court of Appeals subsequently reversed the Court's dismissal, finding the sanction of dismissal to be overly harsh in this matter. See Drake v. Norden Sys., 320 Fed. Appx. 1 (2d Cir. 2009). By its ruling, the Court of Appeals reinstated Drake's fourth amended complaint.

Drake's instant motions are addressed to the Court's ruling of August 24, 2000. Specifically, Drake requests that the Court reconsider its ruling dismissing count three which alleged that UTC violated FCA § 3729(a)(7) & (2) of the FCA in light of Congress's passage of the Fraud Enforcement and Recovery Act of 2009 ("FERA"), P.L. 111-21, § 4(a), 123 Stat. 1621 (May 20, 2009). Alternatively, Drake seeks leave to amend his complaint to assert a new claim under the revised sections of the FCA.

**DISCUSSION**

I.  **Motion for Reconsideration of the Court's Ruling Dismissing Relator's Claim Under Section 3729(a)(2)**

A motion for reconsideration may be based solely upon "matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." Local R. Civ. P. 7(c)(1). An intervening change in controlling law is one ground that would justify granting a motion for reconsideration. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). The movant's burden is made

5

weighty to avoid "wasteful repetition of arguments already briefed, considered and decided." Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

Whether Drake's claim under FCA § 3729(a)(7) & (2) can be revived depends on the resolution of two questions. First, is Drake permitted to seek reconsideration of a ruling entered ten years ago in light of Congress's passage of a new statute? Second, do the provisions of FERA apply to this action in which the alleged conduct occurred more than fifteen years ago?

### A.    Reconsidering Previous Dismissal

As a threshold matter, the Court must determine whether it has the power to reinstate Drake's claims that were originally asserted under FCA § 3729(a)(7) & (2).

Drake's motion is made under Federal Rule of Civil Procedure 54(b), which permits the court to revise an order that adjudicates fewer than all the claims at issue at any time before entry of judgment.[4] As the Court of Appeals has stated with regard to Rule 54(b) and the "law of the case" doctrine:

> As most commonly defined, the doctrine of law of the case posits that when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case.

Arizona v. California, 460 U.S. 605, 618 (1983). Despite this, the application of the law of the case doctrine depends on the context, and the court's prior rulings "are subject to revision by that court at any time before the entry of final judgment...." Rezzonico v. H

---

[4]    Drake has not sought leave to file a motion for reconsideration pursuant to Local Rule of Civil Procedure 7(c)(1) outside the fourteen-day period provided in the rule. Had he so moved, the Court would have been permitted to exercise its discretion to address an untimely motion for reconsideration. See Palmer v. Sena, 474 F. Supp. 2d 353, 354 (D. Conn. 2007).

& R Block, Inc., 182 F.3d 144, 148-149 (2d Cir. 1999). The law of the case doctrine does not prevent a court from reconsidering its own decision prior to entry of final judgment. See Arizona v. California, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."); see also McNulty v. Reddy Ice Holdings, Inc., 2009 U.S. Dist. LEXIS 61517 (E.D. Mich. July 17, 2009) (reversing itself and reinstating previously dismissed claims on Rule 54(b) motion in light of change in controlling law).

The court may reconsider its ruling in light of an intervening change of controlling law. Virgin Atl. Airways, 956 F.2d at 1255. In this matter, Congress amended the False Claims Act in a manner that has the potential to directly affect Drake's claims. Therefore, there is an intervening change of controlling law that would permit the Court to reconsider its ruling dismissing Drake's claim. Drake's motion for reconsideration will be granted.

### B. Application of FERA

The question then becomes whether FERA applies to Drake's claim. FERA provides:

> Date and Application. – The amendments made by this section shall take effect on the date of enactment of this Act [May 20, 2009] and shall apply to conduct on or after the date of enactment, except that [31 U.S.C. § 3729(a)(1)(B)], as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date.

FERA § 4(f)(1).

### 1. Claim Under Former Section 3729(a)(7)

FCA § 3729(a)(7) was recodified as FCA § 3729(a)(1)(G). United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 855 n.* (7th Cir. 2009). FERA does not affect plaintiff's claim under the former FCA § 3729(a)(7) as FERA neither altered the substantive elements of a claim nor applied the former FERA § 3729(a)(7) retroactively to the conduct at issue in this case. As such, Drake's dismissed claim cannot be revived by FERA. The Court is not persuaded by the legislative history that Drake cites in support of his position when the statutory text is clear. See Perriello v. Napolitano, 579 F.3d 135, 143 (2d Cir. 2009) ("When a statute is unambiguous, we are bound by the clear intent of Congress.").

### 2. Claim Under FCA § 3729(a)(2)

As to Drake's claim under FCA § 3729(a)(2), the law is less clear. Specifically, courts have disagreed on how the word "claims" should be construed in FERA § 4(f)(1), which makes FCA § 3729(a)(1)(B) applicable to "all **claims** under the False Claims Act ... that are pending on or after [June 7, 2008]" (emphasis added). The dispute on the definition of the word "claims" concerns whether "claims" refers to "claims" in the sense of "cases" before a court or "claims" as defined in the FCA as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property...." See United States ex rel. Baker v. Cmty. Health Sys., 2010 U.S. Dist. LEXIS 51545, *52 (D.N.M. Mar. 19, 2010) (addressing the different interpretations of the word "claims"); FCA § 3729(b)(2)(A) (defining "claim"). Further clouding this issue is the fact that FERA § 4(f)(2), by its

language, applies to "cases" pending on the date of the action. Therefore, if FERA § 4(f)(2) applies to "cases," how can FERA § 4(f)(1) define "claims" to mean "cases"?

Courts answering this question have come out on both sides of the debate. Compare, e.g., United States ex rel. Westrick v. Second Chance Body Armor, Inc., 685 F. Supp. 2d 129, 140 (D.D.C. 2010) (applying FERA § 4(f)(1) to case pending as of June 7, 2008); United States ex rel. Walner v. Northshore Univ. Healthsystem, 660 F. Supp. 2d 891, 895 n.3 (N.D. Ill. 2009) (same); with Hopper v. Solvay Pharms., Inc., 588 F.3d 1318, 1327 n.3 (11th Cir. 2009) (finding that FERA does not apply retroactively because no claims, as defined by FCA, were pending as of June 7, 2008); United States ex rel. Carpenter v. Abbott Labs., Inc., 2010 U.S. Dist. LEXIS 71906, *18-19 & n.15 (D. Mass. July 16, 2010) (holding FERA § 4(f)(1) applies only to demands pending as of effective date); United States v. Sci. Applications Int'l Corp., 653 F. Supp. 2d 87, 106-107 (D.D.C. 2009). The Abbott Labs court, in fact, was highly critical of decisions equating "claims" and "cases," stating "the cases which have held the opposite (that 'claims' means FCA lawsuits) contain no analysis that refutes the well-reasoned views of the majority." Abbott Labs, 2010 U.S. Dist. LEXIS 71906 at *19 & n.15 (citing cases).

The Second Circuit Court of Appeals has recently entered the fray. In United States ex rel. Kirk v. Schindler Elevator Corp., the Court of Appeals ruled, without significant discussion, that "claims" under FERA § 4(f)(1) referred to "cases." 601 F.3d 94 (2d Cir. 2010). In Kirk, the relator alleged that his employer had failed to file reports required under Veterans Employment Opportunities Act from 1998 until 2004 and filed false reports between 2004 and 2006. Relator had commenced suit in March 2005. The Court of Appeals stated:

9

> In 2009, Congress passed [FERA], which amended and renumbered these provisions as §§ 3729(a)(1)(A) and (a)(1)(B), respectively.... The amendment to § 3729(a)(2) ... was made retroactive to June 7, 2008, applicable to "all claims under the False Claims Act ... that [were] pending on or after that date." Because Kirk's claim was filed in March 2005, and was pending as of June 7, 2008, the potentially applicable provision[ ] in this case [is] ... current § 3729(a)(1)(B), establishing liability for "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim."

Kirk, 601 F.3d at 113.

In this Circuit, therefore, FERA § 4(f)(1) applies to "claims" in the sense of cases before a court. Because this case was pending as of June 7, 2008, Drake may assert a cause of action under the amended FCA.

The Court is not persuaded by defendants' argument that Kirk has little precedential force because the Court of Appeals' opinion lacks indicia of a dispute as to the interpretation of FERA § 4(f)(1). Even if defendants were correct, this Court could not ignore the clear holding of the Second Circuit Court of Appeals because this Court is bound by that ruling. See Ithaca College v. NLRB, 623 F.2d 224, 228 (2d Cir. 1980) ("[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law."); see also Medwig v. Long Island R.R., 2007 U.S. Dist. LEXIS 42001, *11 (S.D.N.Y. June 6, 2007) ("It is settled law that a district court in this Circuit is bound by such decisions unless and until they have been overruled by the Supreme Court or the law is otherwise changed."). There has been no Supreme Court ruling or intervening change of law that would permit the Court to stray from the binding precedent of Kirk. Therefore, the Court will adhere to that ruling.

### 3. Application Ex Post Facto Clause

UTC argues that application of the revised FCA would violate the Ex Post Facto Clause of the Constitution. U.S. Const. art. I, § 9, cl. 3. Under the Ex Post Facto Clause, the government may not "enact a law that punishes an act that was innocent prior to the enactment...." Hobbs v. County of Westchester, 397 F.3d 133, 157 (2d Cir. 2005). The Ex Post Facto Clause applies only to criminal punishments and in civil cases "where the civil disabilities disguise criminal penalties." Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 972 (2d Cir. 1985); see also DeVeau v. Braisted, 363 U.S. 144, 160 (1960) (plurality opinion of Frankfurter, J.) ("The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts.").

To determine whether the Clause applies, the court must determine whether (1) the law is retrospective and applies to conduct that occurred before its enactment; and (2) the law disadvantages affected parties. United States v. Kilkenny, 493 F.3d 122, 127 (2d Cir. 2007). In addressing the Ex Post Facto Clause's application in civil matters, the Supreme Court has stated with regard to the court's inquiry:

> The framework for our inquiry, however, is well established. We must ascertain whether the legislature meant the statute to establish 'civil' proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it 'civil.' Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

Smith v. Doe, 538 U.S. 84, 92 (2003).

The court's first responsibility in deciding whether the Ex Post Facto Clause applies is to determine whether Congress intended the FERA amendments to be civil or criminal in nature. This determination of the nature of the statutorily-defined punishments is initially a matter of statutory construction. See One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972).

Historically, courts examining the FCA have not found it to be punitive. In such instances, the amendments would not implicate Ex Post Facto Clause concerns. For example, the Supreme Court has held that the FCA did not implicate double jeopardy concerns under the Fifth Amendment. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943). In reviewing its prior precedent, the Supreme Court has commented that "proceedings and penalties under the civil False Claims Act are indeed civil in nature, and that a civil remedy does not rise to the level of 'punishment' merely because Congress provided for civil recovery in excess of the Government's actual damages...." United States v. Halper, 490 U.S. 435, 442 (1989); United States ex rel Stevens v. State of Vermont, 162 F.3d 195, 207 (2d Cir. 1998).

Courts within the Second Circuit have adhered to the idea that the FCA does not implicate constitutional protections that apply in criminal proceedings. In United States v. Inc. Vill. of Island Park, the court found that the Excessive Fines Clause did not apply to a judgment under the FCA because such judgment was "entirely remedial." 2008 U.S. Dist. LEXIS 88677, *18 (E.D.N.Y. Oct. 22, 2008). In United States v. Lamanna, the court held that the Double Jeopardy Clause did not apply under FCA. 114 F. Supp. 2d 193, 198 (W.D.N.Y. 2000); see also United States ex rel. Colucci v. Beth Israel Med. Ctr., 603 F. Supp. 2d 677 (S.D.N.Y. 2009) (finding that because qui tam actions under

the FCA are primarily remedial, they survive death of relator).

To be sure, the Supreme Court has recognized the punitive nature of the FCA. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 785 (2000) (recognizing that FCA "imposes damages that are essentially punitive in nature"). In Cook County v. United States ex rel. Chandler, the Supreme Court retreated from this conclusion, stating:

> To begin with it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives. While the tipping point between pay-back and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation, the facts about the FCA show that the damages multiplier has compensatory traits along with the punitive.

538 U.S. 119, 130 (2003); see also Colucci, 603 F. Supp. 2d at 680.

In addition, the FCA is a civil statute codified in title 31 of the United States Code, not a criminal statute codified in title 18. Moreover, FCA § 3730, which governs the procedures by which the Attorney General and private individuals can bring causes of action under section 3729 is titled "Civil actions for false claims."

Finally, the legislative history of the 1986 and 2009 amendments to the FCA underscores the law as a civil statute. Congress referred to FERA as "one of the most potent civil tools" to stop fraud. S. Rep. 110-10, at 4 (2009); see also S. Rep. 99-345, 11, 1986 U.S.C.C.A.N. 5266, 5276 ("The statute is a remedial one. It is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side....") (citing Marcus, 317 U.S. at 543, n.5).

Defendants point to the decision in United States ex rel. Sanders v. Allison

Engine Co., in which the district court found that the FCA was so punitive as to raise ex post facto concerns. See 667 F. Supp. 2d 747 (S.D. Ohio 2009); accord Baker, 2010 U.S. Dist. LEXIS 51545 at *57-67 (finding that retroactive application of the FERA amendments would violate the Ex Post Facto Clause). The Court does not find these opinions persuasive on this point in light of the historical view of the FCA and the relevant legislative history.

A finding that the FCA is civil in nature does not end the inquiry. "Even in those cases where the legislature has indicated an intention to establish a civil penalty," the court must determine whether "the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Hudson v. United States, 522 U.S. 93, 99 (1997). To determine if a statute is so punitive in nature as to transform a civil penalty into a criminal remedy, courts have looked to the seven factors listed in Kennedy v. Mendezo-Martinez, 372 U.S. 144 (1963). See Hudson, 522 U.S. at 99; Lamanna, 114 F. Supp. 2d at 197-98. These factors are:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment – retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. It is important to note, however, that these factors must be considered in relation to the statute on its face.

Hudson, 522 U.S. at 99-100 (citing Kennedy, 372 U.S. at 168-69). These factors provide "useful guideposts." SEC v. Palmisano, 135 F.3d 860, 865 (2d Cir. 1998).

14

The district court in Allison Engine applied this analysis and found that four out of the seven factors weighed in favor of finding that the FCA sanctions were punitive in nature. See Allison Engine, 667 F. Supp. 2d at 756-58; accord Baker, 2010 U.S. Dist. LEXIS 51545 at *65-66. Defendants do not address the seven factors, instead imploring the Court to follow the lead of the Allison Engine court. The Court will undertake its own analysis and draw its own conclusions.

### a. Does FCA Involve an Affirmative Disability or Restraint?

A punishment imposes an "affirmative disability or restraint" when it approaches "the infamous punishment of imprisonment." Hudson, 522 U.S. at 104. The sanctions under FCA do not approach imprisonment. Therefore, this factor weighs in favor of finding a civil purpose. See Allison Engine, 667 F. Supp. 2d at 756.

### b. Is FCA Historically Regarded As Punishment?

As discussed previously, courts have historically observed the punitive elements of the FCA. They have, however, also noted the remedial and compensatory nature of the statutory framework. Therefore, it cannot be said that FCA has been historically regarded primarily as punishment. See Chandler, 538 U.S. at 130; Palmisano, 135 F.3d at 866; but see Allison Engine, 667 F. Supp. 2d at 757-58 ("As determined above, FCA sanctions have historically been regarded, at least in part, as punitive. This factor weighs in favor of a finding that the FCA sanctions are punitive in nature and effect."). Although there are punitive aspects to the FCA, in light of the fact that it has been primarily viewed as civil, this factor weighs in favor of finding FCA to be civil and remedial in nature and effect.

### c. Is There a Scienter Requirement?

Scienter is an element of an FCA violation. See Palmisano, 135 F.3d at 866; see also 31 U.S.C. § 3729(a)(1)(B); United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148 (2d Cir. 1993) (observing that there is a scienter element in an FCA qui tam action); Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1477 (9th Cir. 1996) ("Thus, a violation of the False Claims Act requires scienter."). A scienter requirement, being characteristic of a criminal law, supports a finding that the FCA sanctions are punitive.

### d. Does FCA Promote Retribution and Deterrence?

Damages under the FCA are calculated to provide the government with "complete indemnity for the injuries done it." Marcus, 317 U.S. at 549. The fact that FCA requires a wrongdoer to make payments acts as a deterrent, which is a punishing mechanism, and, thus, a criminal attribute. See Palmisano, 135 F. 3d at 866; Allison Engine, 667 F. Supp. 2d at 757. As the Lamanna court observed, however, "neither disgorgement nor money penalties have historically been viewed as punishment. Rather, the payment of fixed or variable sums of money is a sanction that has long been recognized as civil." 114 F. Supp. 2d at 198. In these circumstances, despite the civil nature of the disgorgement and penalties, such actions are nonetheless slightly punitive in nature.

### e. Is Behavior Proscribed by FCA Already a Crime?

The actions proscribed by section 3729 are also prohibited directly in the criminal law codified in title 18. Despite this, courts often review the civil law to interpret the

16

criminal law.  See, e.g., United States v. McBride, 362 F.3d 360, 371 (6th Cir. 2004).

Nonetheless, the presence of both a civil statute and a criminal statute weighs in favor of finding a civil purpose of the FCA.

### f. Is There an Alternative Purpose Assigned?

Courts have noted that the damages multiplier of FCA serves both compensatory and punitive purposes.  See Chandler, 538 U.S. at 130 ("To begin with it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."); Marcus, 317 U.S. at 550.  The dual purposes of the FCA weigh in favor of finding a civil purpose of the law.

### g. Is FCA Excessive In Relation To Alternative Purpose?

FCA is meant to compensate the government for its financial losses.  However, there are certain instances when the government is entitled to treble damages, which would certainly do more than merely compensate the government for its losses. Specifically, the FERA amendments provide for a "civil penalty of not less than $ 5,000 and not more than $ 10,000 ... plus 3 times the amount of damages which the Government sustains."  FCA § 3729(a)(1)(G).  Such damages are "essentially punitive in nature."  PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 405 (2003); cf. Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.") (antitrust case).  It should be noted, as the Chandler Court observed, the multiplied damages serve to create an incentive for private citizens to start proceedings under the FCA.  538 U.S. at 131.

Despite this goal, there is a disproportionality between the potential liability of a defendant and the harm to the government. This factor thus weighs in favor of finding a punitive aspect to FCA.

In light of the seven factors, the Court finds that the FCA is not sufficiently punitive in nature and effect so as to warrant application of the Ex Post Facto Clause. There is not present in this case the "clearest proof" to defeat Congress's intention to create a civil framework to prevent fraud against the government.

### 4. Whether Amendment to Complaint Would Be Futile

In their opposition to Drake's motion to amend the complaint, defendants argue that Drake's claim under FCA § 3729(a)(1)(B) should be dismissed because the proposed amendment is futile. As explained above, however, the amendment would not be futile because FCA § 3729(a)(1)(B) applies to the conduct alleged to have been committed by defendants.

Upon reconsideration of its previous ruling, the Court will permit Drake to assert a claim as to the Disclosure Statements and PRA reports under FCA § 3729(a)(1)(B) that were previously dismissed by the Court.

## II. Motion for Leave to Amend Complaint

In light of the Court's conclusion above, the Court will deny Drake's motion for leave to amend the complaint as moot. Nonetheless, Drake is instructed to file an amended complaint in accordance with the current state of this case given the past rulings by the Court of Appeals and this Court as well as this current ruling.

## CONCLUSION

For the foregoing reasons, the Court GRANTS relator Walter M. Drake's motion to reinstate the third claim for relief (Doc. #204) and DENIES as moot Drake's motion to amend the complaint (Doc. #203). Drake is instructed to file an amended complaint within twenty-one days of the filing of this ruling.

Dated at Bridgeport, Connecticut, this 26th day of August, 2010.

/s/
Warren W. Eginton
Senior United States District Judge